**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| ERICA LAFFERTY, et al., | § | |
|     Plaintiffs (Judgment Creditors) | § | |
| | § | |
| vs. | § | Civil Action 1:24-cv-1198-RP |
| | § | |
| | § | |
| ALEXANDER E. JONES, et al., | § | |
|     Defendants (Judgment Debtors) | § | |

**JUDGMENT CREDITORS' MOTION TO ABSTAIN AND TO REMAND**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, Williams Aldenberg, William Sherlach, Robert Parker, and Erica Ash (formerly Erica Lafferty) (collectively, the Connecticut Sandy Hook Families or Judgment Creditors), Plaintiffs and Judgment Creditors in the above-styled and numbered foreign judgment proceeding move this Court to abstain from hearing the subject matter of this proceeding and to remand this action to the 261st Judicial District Court of Travis County, Texas (the State Court), and respectfully state as follows:

### I.    INTRODUCTION

1.    This is an action to enforce a judgment rendered in Connecticut that has been domesticated in Texas pursuant to the Uniform Enforcement of Foreign Judgments Act (UEFJA) (codified in Chapter 35 of the Texas Civil Practice and Remedies Code). It belongs in State Court.

2.    Alex Jones's filings in this Court are riddled with misstatements of law that evidence a fundamental misunderstanding of the UEFJA. First, domestication of a

foreign judgment is a ministerial act that does not require personal service on the judgment debtor.  This principle is rooted in the Full Faith and Credit Clause of the United States Constitution.  Further, Texas courts hold that even the failure to give the "notice" required under the UEFJA is not a violation of due process, contrary to Jones's repeated, unsupported assertions otherwise.  Second, Jones repeatedly argues that enforcement of the Judgment "should have been stayed."  However, under the plain language of the UEFJA, a stay required Jones to act.  Instead of filing such a pleading in the State Court, Jones has instead focused his time and effort on filing the 41-page diatribe detailing his upbringing in Texas, warm relationship with Donald Trump, and counterclaims against the parents and loved ones that Jones repeatedly, over the course of years, defamed and harassed following the brutal murder of their first and second grade children and family members.

3.      In untimely removing this case, Jones characterized the domestication as a "concealed" and "secret" effort, yet the same attorney signing the pleadings in this Court also signed the USPS Return Receipt providing him with notice of the domestication.[1]  In fact, Exhibit 1 to Jones's Amended Notice of Removal is a scanned copy of the mailing envelope providing such notice.  Jones's characterization of the Notice as a "form" with "blanks" is nonsense.  The only two blanks in the pleading are for the clerk to assign a cause number and court, a common practice across the state.  Additionally, Travis County

---

[1] Further, while Jones's Removal makes much about the Connecticut Sandy Hook Families not being able to "unilaterally make a lawyer that has not appeared in a case an 'attorney of record' by sending the lawyer an email of the Plaintiffs [sic] own pleading," it simultaneously complains (albeit incorrectly), to the opposite point that "[n]o such notice mandated by the Texas domestication statutes have been given or received by Alex Jones or his counsel, all of whom were known to the Connecticut Plaintiffs when the purported domestication proceeding commenced."  [Dkt. 7 at pgs. 3, 13].

operates on a central docket and the court a case is assigned to is of no import to the operation of the proceedings.

4.     Jones's arguments for this Court to exercise jurisdiction fail as detailed herein.  In the alternative, this Court should remand the proceeding based on principles of equity and comity with state court.

## II.   BACKGROUND

5.     Following the massacre at Sandy Hook Elementary School, Alex Jones (Jones) propagated the lie that the massacre was a hoax and the parents who lost their children were crisis actors.   After years of abuse[2] brought on by Jones's lies, the Connecticut Sandy Hook Families brought suit against Jones for defamation and a jury awarded nearly $1.5 billion in damages (the Connecticut Judgment).

6.     Jones immediately acted to undermine the verdict, telling the Connecticut Sandy Hook Families on air from his Infowars show, "Hey, folks, don't go buying big homes."[3]  Less than two months later, Jones filed for bankruptcy under Chapter 11.  On June 14, 2024, the Bankruptcy Court converted his Chapter 11 case to Chapter 7.

7.     On October 19, 2023, the Bankruptcy Court entered an order determining that $1,115,000,000 of the Connecticut Judgment was non-dischargeable in bankruptcy and, therefore, unaffected by the bankruptcy proceedings.  Additional proceedings before the Bankruptcy Court are ongoing as to whether the remaining $321 million of the Connecticut Judgment is non-dischargeable.

---

[2] Jones's claim that he "admitted early on his mistake" is indisputably false and a misrepresentation to this Court.  *See* [Dkt. 7] Am. Not. Removal ¶ 5(A).

[3]          https://www.usatoday.com/story/news/nation/2022/10/12/alex-jones-verdict-jury-orders-965-million-sandy-hook-lies/10479732002/

8.      On August 1, 2024, the Connecticut Sandy Hook Families filed their Notice of Filing of Foreign Judgment under the UEFJA (the Notice), thereby entitling the Connecticut Judgment to the same recognition in Texas as a judgment rendered in Texas state court.[4]  As required by the UEFJA, Judgment Creditors mailed notice of the filing to Jones through his attorneys.  Shelby Jordan signed and returned the Return Receipt for the mailing.  A true and correct copy of the signed Return Receipt is attached as **Exhibit A**.  The date of delivery is "8/6/24."

9.      On October 3, 2024, Judgment Creditors filed their Application for Post-Judgment Turnover and Appointment of Receiver as to Judgment Debtor Alexander E. Jones (the Turnover Application).  Although not required, Judgment Creditors provided Jones with notice of the application and hearing setting through his attorneys.

10.      On October 7, 2024, Jones (through counsel Shelby Jordan) filed his Removal of Civil Action and Notice of the Removal of a Civil Action.  [Dkt. 1].  On October 28, 2024, Jones filed his Amended Removal of Civil Action and Notice of the Removal of a Civil Action. [Dkt. 7].  That same day, Jones also filed an Answer, Affirmative Defenses Subject Thereto, and Counterclaims. [Dkt.8].

### III.    DEFINING THE "REMOVED ACTION"

11.      A final judgment disposes of all issues and all parties.  *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992), *superseded by statute on other grounds*.  The Connecticut Judgment indisputably did so, as it is currently on appeal in Connecticut, and is therefore a final judgment.  *See* [Dkt. 7] Am. Not. Removal ¶ 7(A).

---

[4] Jones's Amended Removal incorrectly states that Jones is the only named defendant.  Judgment Creditors' Notice of Filing of Foreign Judgment is plainly directed to both Alex Jones and Free Speech Systems, LLC. [Dkt. 1-1, Tab 4].

12.     A copy of a foreign judgment authenticated in accordance with an act of congress of a statute of this state may be filed in the office of the clerk of any court of competent jurisdiction of this state.  TEX. CIV. PRAC. & REM. CODE § 35.003(a); *see e.g.* TEX. R. EVID. 902.  Under the UEFJA, a "foreign judgment" is a judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in this state.  TEX. CIV. PRAC. & REM. CODE § 35.001.  "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. CONST. art. IV, § 1.

13.     "[T]he filing of the foreign judgment compromises both a plaintiff's original petition and final judgment."  *Walnut Equip. Leasing Co. v. Wu*, 920 S.W.2d 285, 286 (Tex. 1996).

14.     The procedure to domesticate a foreign judgment is as follows:

(a)     At the time a foreign judgment is filed, the judgment creditor or the judgment creditor's attorney shall file with the clerk of the court an affidavit showing the name and last known post office address of the judgment debtor and the judgment creditor.

(b)     The judgment creditor or the judgment creditor's attorney shall:

(1)     promptly mail **notice** of the filing of the foreign judgment to the judgment debtor at the address provided for the judgment debtor under Subsection (a); and

(2)     file proof of mailing of the notice with the clerk of the court.

(c)     The notice must include the name and post office address of the judgment creditor and if the judgment creditor has an attorney in this state, the attorney's name and address.

> (d)     On receipt of proof of mailing under Subsection (b), the
>         clerk of the court shall note the mailing in the docket.

Tex. Civ. Prac. & Rem. Code § 35.004 (emphasis added).

15.     Judgment Creditors and the undersigned complied with each of the foregoing requirements in domesticating the Connecticut Judgment. Judgment Creditors mailed the requisite notice to Jones's known representatives—Shelby Jordan and Vickie Driver—with whom they have had recent contact through the pending bankruptcy proceedings. Notice was provided to Jones's counsel as a courtesy to Jones. Throughout the years that Judgment Creditors have been in litigation with Jones, they have been steadfast in respecting his privacy by not making his home address a matter of public record.[5]

16.     Furthermore, Shelby Jordan signed and returned the Return Receipt acknowledging receipt of the Notice. *See* Exhibit A. Shelby Jordan represents Jones in this matter, as he has signed every pleading filed in this Court, and Jones has made no allegation that he was somehow harmed by his attorneys receiving the Notice. *See Nicholas v. Env't Sys. (Int'l) Ltd.*, 499 S.W.3d 888, 898 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (affirming trial court's recognition of judgment where notice mailed to judgment debtor's Canadian attorney).

17.     A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed. Tex. Civ. Prac. & Rem. Code § 35.003(c). When a judgment creditor files an authenticated copy of a foreign

---

[5] While property records are a matter of public record and available via the Travis County Central Appraisal District, Jones's name is associated with several properties.

judgment, the creditor presents a prima facie case for the judgment's enforcement. *Tammy Tran Attys. at Law, LLP v. Spark Funding, LLC*, 634 S.W.3d 311, 314-15 (Tex. App.—Houston [1st Dist.] 2021, pet. denied).  The burden then shifts to the judgment debtor to prove by clear and convincing evidence that the foreign judgment should not be given full faith and credit.[6]  *Id.*  The judgment debtor may use any procedural device for reopening, vacating, or staying the judgment that any post-judgment debtor is allowed.[7] *Id.*

18.    "Thus, on the day the authenticated foreign judgment is filed, it constitutes a final judgment, which can be challenged using the same procedures and under the same timelines that apply to a Texas judgment." *Int'l Armament Corp. v. Stocker & Lancaster LLP*, 565 S.W.3d 823, 826 (Tex. App.—Houston [14th Dist.] 2018, no pet.).  A motion arguing that a Texas trial court should not afford full faith and credit to a foreign judgment is frequently referred to as a motion to "vacate" and is akin to a motion for new trial.  *Id.* However, there is a significant difference in the effect of a ruling on a motion to "vacate" a foreign judgment under the UEFJA and ruling on a similar motion in a non-UEFJA case.  *Id.*  "[A] Texas trial court has no jurisdiction to set aside another state's judgment and return the parties to the positions they occupied before the foreign judgment was

---

[6] Exceptions to full faith and credit that are well-established are (1) when a decree is interlocutory; (2) when a decree is subject to modification under the law of the rendering state; (3) when the rendering court lacks jurisdiction; (4) when the judgment was procured by extrinsic fraud; and (5) when the period for enforcing the foreign judgment has expired.  *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 484-85 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Jones has not raised and cannot, in good faith, raise any of these.

[7] A motion for new trial or to modify, correct, or reform a judgment must be filed within thirty days from the date the judgment is signed. Tex. R. Civ. P. 329b.  Because the Connecticut Judgment became a Texas judgment on the date the Notice was filed on August 1, 2024, Jones had thirty days from August 1 to seek such relief, making his deadline September 2, 2024.  Any such motion would now be untimely.  In contract, the UEFJA does not impose a deadline for a judgment debtor to seek a stay.  *See* Tex. Civ. Prac. & Rem. Code § 35.006.

rendered." *Id.*  Instead, the granting of a motion to "vacate" under the UEFJA is a determination that the foreign judgment is not entitled to full faith and credit in Texas and is unenforceable here.  *Id.*  The Court only has two alternatives when an attack is made on an authenticated foreign judgment: enforce the judgment or declare it void for want of jurisdiction. *Brown's Inc. v. Modern Welding Co.*, 54 S.W.3d 450, 453-54 (Tex. App.—Corpus Christi 2001, no pet.).

19.    "A defense asserted in a Texas court against the enforcement of a foreign judgment is a collateral attack" and a collateral attack on a sister state's judgment cannot raise a defense that goes to the merits of the original controversy.  *Ward v. Hawkins*, 418 S.W.3d 815, 822 (Tex. App.—Dallas 2013, no pet.).  A collateral attack on a judgment is successful only where the judgment is established as void, and a "judgment is void only when it is apparent the court rendering it lacked (1) jurisdiction over the parties or property; (2) jurisdiction over the subject matter; (3) jurisdiction to enter the particular judgment; or (4) the capacity to act as a court." *Id.*  Jones has alleged none of these and he cannot in good faith.

20.    The "defenses" Jones raises in his Answer go to the merits of the original controversy and complain about actions the Connecticut Court took in establishing Jones's liability.[8]  Accordingly, Jones's rambling "counterclaims" purporting to attack the

---

[8] For example:

- "Why the [Connecticut] Court do this [sic] is not a matter of speculation or 'conspiracy theory,' and we need not guess or speculate as to why the Connecticut Court removed all of Mr. Jones' Constitutional rights."

- "the striking of all Mr. Jones [sic] defenses"

- "holding Mr. Jones responsible for . . ."

- "working directly and indirectly with the Connecticut judiciary . . ."

- "All of the acts herein above addressed occurred under color of state law as the Connecticut Plaintiffs instigated the acts of the Connecticut state court about which complaint is made."

Connecticut Judgment based, in part, on the Connecticut Court's finding of liability and instruction to the jury regarding the same, are misplaced.

21.    The UEFJA also provides for a debtor to seek a stay of the domesticated judgment.  Jones cites this provision arguing the foreign judgment "should have been stayed."  Jones misunderstands the statute, which requires **him** to act for a stay to be implemented.  Specifically, the UEFJA provides:

> (a)    **If the judgment debtor shows** the court that an appeal from the foreign judgment is pending or will be taken, that the time for taking an appeal has not expired, or that a stay of execution has been granted, has been requested, or will be requested, **and proves** that the judgment debtor has furnished or will furnish the security for the satisfaction of the judgment required by the state in which it was rendered, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated.

TEX. CIV. PRAC. & REM. CODE § 35.006(a) (emphasis added).  Jones has taken no action to seek a stay of the foreign judgment, and instead filed his 15-page Notice of Removal [Dkt. 1], 21-page Amended Removal [Dkt. 7], and 41-page Answer, Affirmative Defenses Subject Thereto, and Counterclaims [Dkt. 8].

22.    Jones also claims the domestication of the foreign judgment is void for lack of due process.[9]  Jones's due process rights are not implicated; Texas courts hold that defects in notice or filing are not jurisdictional, but merely procedural.  *See e.g. Tanner v. McCarthy*, 274 S.W.3d 311, 316-17 (Tex. App.—Houston [1st Dist.] 2008, no pet.);

---

[9] *See e.g.* [Dkt. 8] Answer: "Jones denies that the Connecticut Judgment has been properly domesticated and alleges that such purported domestication was concealed from Jones, was obtained without due process of law or in strict compliance with Texas Domestication Statutes, and accordingly is void" (¶ 4); "or as a result of the improper and void attempt to domesticate the Connecticut Judgment" (¶¶ 18, 19); "the Domestication of the Judgment was obtained by Connecticut Plaintiffs' denial of Jones [sic] Constitutional and due process rights and is void" (¶ 24); "the Domestication of the Connecticut Judgment was procured by denial of due process notice to Jones and is void" (¶ 27).

*Tri-Steel Structures, Inc. v. Hackman*, 883 S.W.2d 391, 394 (Tex. App.—Fort Worth 1994, writ denied); *Carter v. Cline*, No. 03-10-00855-CV, 2011 WL 4924214 (Tex. App.—Austin Oct. 13, 2011, no pet.).

23.     Further, Judgment Creditors were not required to provide Jones with advance notice of their Turnover Application but did so anyway.  "[F]ailure to provide prior notice and hearing before the issuance of a turnover order under section 31.002 does not compromise constitutional principles."  *Thomas v. Thomas*, 917 S.W.2d 425, 433-34 (Tex. App.—Waco 1996, no writ).  The turnover statute provides a remedy allowing the trial court to enforce a prior order that has been refused or disobeyed.  *Id.*  Where a judgment is subject to collection, "notice can be implied that the creditor would attempt to collect on the judgment."  *Id.*  Due process in providing notice of the domestication is not at issue.

## IV.   ARGUMENT AND AUTHORITIES

24.     "Actions to enforce state court judgments in federal court are rare."  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 122 (2d Cir. 2017).  A state court judgment may be enforced in federal court when there is an independent basis for jurisdiction.  *See Woo v. Spackman*, 988 F.3d 47, 50-52 (1st Cir. 2021).  This is because the federal judgment recognition statute (28 U.S.C. § 1963) applies only to registration of federal court judgments in another federal court.  *Id.* (noting that three of four other circuits that have addressed the issue have reached the same conclusion). Jones's Removal alleges jurisdiction based on complete diversity of the parties and issues

"related to" Jones's case pending under title 11.[10]  These arguments fail, as detailed below. In addition, this proceeding is properly remanded because Jones's Removal is untimely.

25.     When there are doubts regarding whether removal jurisdiction is appropriate, they should be resolved against federal jurisdiction.  *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  Here, there are far more than a myriad of factors that show that jurisdiction is in fact lacking, and the Court should therefore decline jurisdiction and remand this proceeding to the State Court.

**A.     Jones's removal is untimely.**

26.     A notice of removal must be filed within 30 days after the defendant receives a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.  28 U.S.C. § 1446(b)(1).  The UEFJA does not require that the judgment debtor actually receive notice of the filing of foreign judgment.  *Hackman*, 883 S.W.2d at 394.  Nevertheless, Exhibit A demonstrates that Jones received notice of the filing through counsel on August 6, 2024.  Accordingly, even by a generous deadline of the date Jones's counsel signed acknowledging delivery of the Notice, the deadline for Jones to remove this proceeding was September 5, 2024.  Jones's October 7, 2024 was filed a month after that deadline.  The removal is untimely, and this matter should be remanded to the State Court.

---

[10] Jones's Amended Removal also relies on Section 1442, which provides for removal of actions against federal officers or agencies.  In purported "support" for the grounds, Jones cites to *Williams-Boldware v. Denton Cty., Tex.*, 741 F.3d 635 (5th Cir. 2014), which Jones's Removal states "held that the District court had removal jurisdiction over claim originally filed in state court owing to a Chapter 13 bankruptcy trustee's status as a federal officer removal privilege (28 U.S.C. § 1442(a)(1)."  This is entirely inaccurate.  *Williams-Boldware* has nothing to do with a trustee, and instead addresses rulings in a case where the plaintiff alleged she was subjected to a hostile work environment based upon her race.  This case has no apparent relevance to the issues here.

**B.      This matter is ancillary to a state court suit that is final, and removal is, therefore, improper.**

27.      Removal is permitted for "any civil action" that is brought in a state court of which the district courts have original jurisdiction.  28 U.S.C. § 1441(a).  While federal courts have broadly construed the term "civil action," it is not without limit and has generally been construed to require "a suit separate from, and not ancillary to, a suit in state court." *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013) (collecting cases).  "Under our settled precedent, actions are not ancillary and are instead independent civil actions when they are in effect suits involving a new party litigating the existence of a new liability." *Id.* (internal quotations omitted).  While there is no bright line rule separating supplemental proceedings from independent proceedings for removal purposes, "a proceeding is independent, and thus potentially removable, where it presents genuine disputes with new parties and raises new issues of fact and law." *Rizvi v. Allstate Corp.*, 833 F.3d 724, 727 (7th Cir. 2016) (internal citations and quotations omitted).

28.      In *Jackson-Platts*, a state court rendered judgment on a jury verdict for the plaintiff based on tort claims against two defendants.  727 F.3d at 1131.  Later, the plaintiff commenced an action under a Florida law that allows a plaintiff with an unsatisfied judgment to open proceedings supplementary to execution.  *Id.*  In that proceeding, the plaintiff moved the court to add two **new** defendants and enter final judgment against them for the same amount found by the jury.  *Id.*  The basis for the request was an allegation that the original defendants fraudulently transferred assets to the new defendants, which the plaintiff sought to levy upon in satisfaction of her judgment.  *Id.* at 1132.  The new defendants removed the proceeding based on diversity of the parties.  *Id.*

The plaintiff sought remand, arguing the proceeding against the new defendants did not constitute a "civil action." *Id.*

29.    In concluding the proceeding was a "civil action" under Section 1441, the Court explained that the proceeding added new parties, raised new questions of fact, and introduced new issues. *Id.* at 1136. It found the additional issues "wholly unrelated to the underlying tort action and make [the Florida law authorizing the proceeding] sharply different from an ancillary action to enforce an existing judgment." *Id.* In addition, the Court noted that the Florida statute provided "substantial procedural safeguards" that "also suggest the proceedings are not merely ancillary." *Id.* at 1137-38 (noting, for example, that the statute recognized that the supplementary proceedings against third parties may require a jury trial).

30.    These circumstances are distinct from the domestication of a foreign judgment. Namely, the domestication is a procedural mechanism affording full faith and credit to an existing judgment and is therefore between the same parties regarding the same claims. Additionally, the procedural mechanisms in place are relatively minimal. Personal service of the judgment debtor is not required, and even failure of the required notice to actually be received is not a denial of due process. *Hackman*, 883 S.W.2d at 394 (the UEFJA "does not require proof that the judgment debtor received the notice; in fact, it does not require that the judgment debtor actually receive notice, it only requires that it be sent by regular mail in one of two ways."). Finally, the defenses a judgment debtor can raise to the domestication are limited; it cannot collaterally attack the merits of the original controversy. *Ward*, 418 S.W.3d at 822.

31.    This Court should part with the conclusion reached by the District Court of Maryland in 1990 holding that the initiation of a proceeding to enforcement a foreign

judgment is a civil action and properly removed.  *See Weiner v. Blue Cross of Maryland, Inc.*, 730 F. Supp. 674, 679 (D. Md. 1990), *aff'd sub nom. Weiner v. Blue Cross & Blue Shield of Maryland, Inc.*, 925 F.2d 81 (4th Cir. 1991).  The *Weiner* Court reasoned that, at common law, the procedure to enforce the judgment of another state required the filing of a new suit, and the new suit on the judgment was an independent action.  *Id.* at 676.  It then concluded that the UEFJA is a "facilitating device" and the act of a state in adopting an act "merely to streamline the procedure should not alter the right of removal which was created by Congress."  *Id.* at 677 (noting that the UEFJA does not alter any substantive rights or defenses that would be available to a judgment debtor if suit were filed to enforce the foreign judgment).

32.     A different result from that reached in *Weiner* is warranted here based on the case law that has developed in the intervening 30+ years.  Texas law is clear that "the filing of the foreign judgment compromises both a plaintiff's original petition and final judgment."  *Wu*, 920 S.W.2d at 286.  While the final judgment is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed, the filing nevertheless constitutes a "final judgment" upon filing. It is therefore not a "civil action" as that term has been defined and applied.  *See Dalton v. Dalton*, 551 S.W.3d 126, 135-36 (Tex. 2018); *Wu*, 920 S.W.2d at 286.  Because this is an ancillary proceeding and not a "civil action," removal is improper under Section 1441 and the Court should remand this proceeding.

**C.     Snap Removal is inapplicable to defeat the Forum State Defendant Exception because there is no requirement that Jones be "properly joined and served" in the underlying proceeding.**

33.     A civil action removable on the basis of diversity jurisdiction may not be removed if any of the parties in interest properly joined and served as defendants is a

citizen of the State in which such action is brought.  28 U.S.C. § 1441(b)(2).  However, courts have found removal permissible prior to the home-state defendant being "properly joined and served" based on the plain language of the statute, known as "snap removal." *See e.g. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) (explaining that statutory construction begins with the words of the text and the statute plainly provides that an action may not be removed once a home-state defendant has been "properly joined and served").

34.    Here, Judgment Creditors were not required to "join and serve" Jones with the Notice.  The UEFJA instead requires the judgment creditor to "promptly mail notice of the filing of the foreign judgment to the judgment debtor."  Tex. Civ. Prac. & Rem. Code § 35.004(b)(1).  The fact that the statutory language does not match, and that the snap removal exception is rooted in the plain language of the statute, underscores the absurdity of Jones's act in removing this proceeding.  Jones is a resident of Texas.  Judgment Creditors have a judgment rendered in Connecticut state court that they have registered in Texas under Texas state law, and rather than move to stay the enforcement of the Connecticut Judgment in Texas (which is expressly provided for by Texas state law), Jones has instead removed this pure function of state law to the federal courthouse a mile down the road as a delay tactic and excuse for filing inflammatory, unfounded pleadings.  This is an absurd result, and snap removal is simply inapplicable under the plain language of the statute that courts have relied on in recognizing the exception in the first place.

35.    In the alternative, Jones was "properly joined and served" as contemplated and required by the UEFJA the moment the Notice was deposited in the United States mail depository.  The purpose of the "joined and served" requirement is to prevent a plaintiff from blocking removal by joining a home-state defendant against whom it does

not intend to proceed and whom it does not serve.  *See Magallan v. Zurich Am. Ins. Co.*, 228 F. Supp. 3d 1257, 1260 (N.D. Okla. 2017) (collecting cases).  That objective was met here, where the requisite notice was provided to the home-state defendant as required by the UEFJA.  There is no other method of analyzing the result: Jones was never going to be personally served with the Notice because personal service is not required.  Indeed, service is not required.  The UEFJA only requires notice, which Texas courts acknowledge does not guarantee actual receipt.  *See Hackman*, 883 S.W.2d at 394.  Because snap removal is inapplicable under these circumstances and because Jones is a resident of the forum state, the Court should remand this action.

**D.    Snap Removal should not be permitted by the forum state defendant.**

36.    In the alternative, the Court should remand this proceeding and find that a forum defendant may not engage in snap removal.

37.    The Fifth Circuit in *Texas Brine* weighed in on snap removal, holding, "[a] **non-forum** defendant may remove an otherwise removable case even when a named defendant who has yet to be 'properly joined and served' is a citizen of the forum statute." 955 F.3d at 487 (emphasis added).  In so holding, the Fifth Circuit limited the scope of its holding to a non-forum defendant.    In its statutory interpretation analysis and consideration of whether snap removal permits an absurd result, the Court noted that "[o]f some importance, the removing party is not a forum defendant."  *Id*.  It explained, "[d]iversity jurisdiction and removal exist to protect out-of-state defendants from in-state prejudices," thereby holding "[t]he plain-language reading of the forum-defendant rule as applied in this case [where removal was by the out-of-state defendant] does not justify a court's attempt to revise the statute."  *Id*.  Finally, the Court also noted that the removal statute is strictly construed, and remand favored.  *Id*.

38.    While district courts within the circuit have since permitted snap removal by the forum state defendant, such result should not be permitted here where the **only** defendants/judgment debtors are residents of the forum (Free Speech Systems, LLC was formed under the laws of the state of Texas and its principal place of business is Texas). Based on the limited holding of *Texas Brine*, the Court should remand this case.

**E.    This proceeding is not "related to" Jones's bankruptcy case, vitiating this alleged ground for jurisdiction.**

39.    Section 1334(b) provides that the district courts shall have original jurisdiction of civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "[T]he United States Supreme Court has noted, 'related to' bankruptcy proceedings include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995)). The test within the Fifth Circuit for whether a proceeding properly invokes federal bankruptcy jurisdiction is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* "To fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor." *In re Wood*, 825 F.2d 90, 94 (5th Cir. 1987).

40.    Here, Judgment Creditors filed their existing Connecticut Judgment in Texas for it to be afforded full faith and credit in Texas. This alone has no effect on the bankruptcy estate. Judgment Creditors then filed the Turnover Application. The Turnover Application is express in its limitation to address only assets that do **not** affect the bankruptcy estate. For example, it provides:

(a)     "For the avoidance of doubt, this Application is brought **only** as to Judgment Debtor Alex Jones.  Judgment Creditors are not seeking turnover and appointment of a receiver as to the other Judgment Debtor in this matter, Free Speech Systems, LLC."[11]

(b)     "Judgment Creditors are **not** seeking any relief that would be inconsistent with the pending Chapter 7 bankruptcy case of Judgment Debtor Alex Jones (the Chapter 7 Case), including seeking any relief with respect to assets that Judgment Debtor Alex Jones owned on or before June 14, 2024 [the date of conversion], as such assets constitute property of the Chapter 7 bankruptcy Estate."

(c)     "Alex Jones' Chapter 7 bankruptcy Estate, including all the assets of Free Speech Systems, LLC, are protected by the Bankruptcy Court's automatic stay, and Judgment Creditors do not seek any relief that would violate that stay or with respect to assets that are included in the Chapter 7 bankruptcy Estate."

(d)     "Judgment Creditors seek to only execute upon the following categories of assets, and, in each case, solely to the extent necessary to satisfy the Judgment:

      a.     any non-exempt assets Judgment Debtor Alex Jones has acquired post-conversion or may acquire in the future;

      b.     any pre-conversion assets of Judgment Debtor Alex Jones which are expressly abandoned by the Trustee such that they no longer are property of the Chapter 7 bankruptcy Estate; and

      c.     any post-conversion payments Judgment Debtor Alex Jones is contractually entitled to."

(e)     "Appointment of a receiver is prudent to provide for an orderly distribution of assets given Judgment Debtor has multiple creditors as detailed herein and given the

---

[11] This paragraph goes on to explain that "[t]he United States Bankruptcy Court for the Southern District of Texas issued an Order vesting authority in the trustee appointed for Judgment Debtor Alex Jones's bankruptcy to take control of Judgment Debtor Free Speech Systems, LLC."

attention that must be given to delineate the bankruptcy Estate."

(f) "Judgment Creditors request that Judgment Debtor be ordered to turn over all non-exempt, non-bankruptcy estate property."

The Turnover Application could not be clearer.  It does not affect the bankruptcy estate.  In addition, Judgment Creditors provided a courtesy copy of the Application to the Trustee to keep him fully apprised.  This proceeding is not "related to" the bankruptcy; it is intentionally and expressly separate, therefore, Section 1334(b) does not provide grounds for this Court to exercise jurisdiction.

## F.   Permissible abstention and equitable remand are appropriate in this case.

41.   In the interest of justice or of comity with State courts, a district court may abstain from hearing particular proceedings even if they are related to a case under title 11.  28 U.S.C. § 1334(c)(1).  In addition, the court may remand a claim or cause of action "on any equitable ground" despite being related to a bankruptcy case.  28 U.S.C. § 1452(b).

42.   There are fourteen factors to be considered and balanced in determining whether to exercise discretionary abstention and equitable remand.[12]  *N. Nat. Gas Co. v. Sheerin*, No. SA-03-CA-304-RF, 2003 WL 22594457, at *6 (W.D. Tex. October 20, 2023).  These factors favor remand of this proceeding.  Jones's removal is an exercise in delay

---

[12] These are: (1) the effect on the efficient administration of the estate if abstention is exercised; (2) the extent to which state-law issues predominate over bankruptcy issues; (3) whether the law is difficult or unsettled; (4) whether a related proceeding has commenced in state court or other non-bankruptcy court; (5) whether there is another jurisdictional basis besides Section 1334; (6) how closely related the suit is to the main bankruptcy case; (7) the substance, rather than form, of the case; (8) the possibility of severing state-law claims from the core bankruptcy matters to allow judgment in state court and enforcement in bankruptcy court; (9) the burden on the bankruptcy court; (10) the likelihood that removal involves forum shopping; (11) existence of a right to jury trial; (12) the presence of nondebtor parties; (13) comity; and (14) the possibility of prejudice to others in the action.

and forum shopping only given the UEFJA provides a simple mechanism that could have afforded Jones a stay of enforcement without the attendant burden of Jones's Notice of Removal and assertion of misplaced, improper "counterclaims."[13] Jones's attempt at snap removal is (a flawed) technicality, and "a technicality does not produce judicial efficiency or proceedings in the interest of justice." *Id.* at *7. The issues in this proceeding are a function of pure state law, and they do not affect the bankruptcy estate. The substance of the claims fit squarely within the state court's jurisdiction, and this matter is best suited to state court adjudication. Finally, equity favors remand to the state court the Connecticut Sandy Hook Families filed their foreign judgment in.

### G. Costs and expenses incurred because of the removal should be awarded to the Connecticut Sandy Hook Families.

43. An order remanding a case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. 28 U.S.C. § 1447(c). The propriety of a defendant's removal is central to determining whether to impose fees. *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993). "To determine whether removal jurisdiction existed, defense counsel had only to consider the complaint at the time the petition for removal was filed." *Id.* Fees are properly awarded if the removing defendant "lacked objectively reasonable grounds to believe the removal was legally proper." *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004).

44. Judgment Creditors request their attorney fees and costs incurred in association with Jones's removal of this action. The removal was untimely. Further, all

---

[13] Jones has not argued that his "counterclaims" provide a basis for the court to exercise jurisdiction, nor could they. The existence of federal question jurisdiction is determined by applying the "well-pleaded" complaint rule, and the exercise of jurisdiction is determined solely from what appears on the face of plaintiff's complaint. *Offs. At 2525 McKinnon, LLC v. Ornelas*, 681 F. Supp. 2d 778, 783 (N.D. Tex. 2010).

that was required of Jones upon review of the Connecticut Sandy Hook Families' Notice was to file a motion to stay enforcement, or alternatively, a motion to "vacate." Jones did neither, instead removing the action, characterizing it as a "secret" domestication despite his own attorney's signature acknowledging receipt, and filing a groundless answer with "counterclaims" asserted against the Connecticut Sandy Hook Families. Indeed, Jones knew of his ability to seek a stay, as his Removal recites that he "could stay the Connecticut Judgment if domesticated the same as he could stay the Texas Judgment," which begs the question why he failed to do so and instead removed this proceeding. An award of fees and costs in an amount to be determined at a hearing on this Motion is warranted.

## V.   CONCLUSION

The Connecticut Sandy Hook Families domesticated their valid Connecticut Judgment in Texas in accordance with the UEFJA, and filed their Application over concern that Jones will intentionally squander post-petition assets. Jones's removal of this proceeding is baseless, and his "counterclaims" violate foundational principles of law that prohibit the merits of a controversy from being collaterally attacked. Jones is wrong on multiple levels, but one thing is clear: this matter belongs in State Court.

### PRAYER

For these reasons, the Connecticut Sandy Hook Families respectfully request that the Court remand this case back to State Court in the 261st Judicial District of Travis County, Texas.

Respectfully submitted this 1st day of November 2024.

>                    _/s/ Bethany G. Gingras_
>                    Ryan E. Chapple
>                    State Bar No. 24036354
>                    rchapple@cstrial.com
>                    Benjamin D. Evans
>                    State Bar No. 24081285
>                    bevans@cstrial.com
>                    Bethany G. Gingras
>                    State Bar No. 24120852
>                    bgingras@cstrial.com
>                    **CAIN & SKARNULIS PLLC**
>                    303 Colorado Street, Suite 2850
>                    Austin, Texas 78701
>                    512-477-5000
>                    512-477-5011—Facsimile
>                    **ATTORNEYS FOR THE CONNECTICUT**
>                    **SANDY HOOK FAMILIES**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Judgment Creditors' Motion to Abstain and to Remand has been forwarded to all counsel of record via the Court's CM/ECF system on this 1st day of November 2024, as follows:

>        Shelby A. Jordan
>        Jordan & Ortiz, P.C.
>        500 North Shoreline Boulevard
>        Suite 900
>        Corpus Christi, TX 78401
>        jordan@jhwclaw.com
>
>        Antonio Ortiz
>        Jordan & Ortiz, PC
>        500 North Shoreline Boulevard
>        Suite 804
>        Corpus Christi, TX 78401
>        361-884-5678
>        aortiz@jhwclaw.com

>                    _/s/ Bethany G. Gingras_
>                    Bethany G. Gingras