IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE:  ALEXANDER E. JONES | § § § | CASE NO. 22-33553 (CML) |
| Debtor. | § § § § | Chapter 7 |
| David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, Robert Parker, and Erica Ash, Plaintiffs, v. Alexander E. Jones, Defendant. | § § § § § § § § § § § § § § § § | ADV NO. 24-03279 (CML) |

**DEFENDANTS' MOTION FOR LEAVE TO FILE
SECOND AMENDED COUNTERCLAIM**

This motion seeks an order that may adversely affect you.  If you oppose the motion, you should immediately contact the moving party to resolve the dispute.  If you and the moving party cannot agree, you must file a response and send a copy to the moving party.  You must file and serve your response within 21 days of the date this was served on you.  Your response must state why the motion should not be granted.  If you do not file a timely response, the relief may be granted without further notice to you.  If you oppose the motion and have not reached an agreement, you must attend the hearing.  Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.

Represented parties should act through their attorney.

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Defendant and Counter-Plaintiff Alexander E. Jones (herein "Alex Jones") for himself and

on behalf of his wholly owned company, Free Speech Systems, LLC (Jones and FSS are herein

1

sometimes collectively called "Jones"), file this Motion for Leave to File Second Amended Counterclaim ("SAC") and would show as follows:

## I.
## PRELIMINARY STATEMENT

1. Fifteen Connecticut Plaintiffs (the "Connecticut Plaintiffs") filed an Application for Post-Judgment Turnover and Appointment of a Receiver as to Judgment Debtor Alex Jones on October 3, 2024 in the State District Court, Travis County, Texas. That Application and proceeding was preceded by an action brought in Texas to domesticate their Connecticut Judgment, which domestication action was (a) filed only days before the turnover and (b) filed even though Alex Jones was in his pending Chapter 7 case and no final and appealable order had, or has been, entered finding the Connecticut Judgment is non-dischargeable.

2. Notwithstanding that no final judgment allowing collection of their judgment had been entered, the Connecticut Plaintiffs misrepresented to the Domestication Court and to the District Court, Travis County, Texas that the Connecticut Plaintiffs held a "final" judgment from this Bankruptcy Court determining their claim against Jones to be non-dischargeable. Filing such actions violated this Court's automatic stay of all collection efforts on all creditors' claims against Jones unless found non-dischargeable.

3. Accordingly, such actions by the Connecticut Plaintiffs were void under State law and thus, under State law there is no domesticated Judgment. In fact, since the Connecticut Plaintiffs' filing of this now removed Adversary, the Connecticut Plaintiffs have done nothing in this adversary except seek dismissal of Jones' counterclaim against all the Connecticut Plaintiffs.

## II.
## PROCEDURAL POSTURE OF THIS ADVERSARY PROCEEDING

4.  Alex Jones filed his Removal of Civil Action and Notice of the Removal of Civil Action on October 7, 2024 [Dkt. No. 1].

5.  Alex Jones then filed his Answer, Affirmative Defenses Subject Thereto, and, joined by FSS, their original Counterclaims on October 28, 2024 [Dkt. No. 8] while the Removed case was pending before the United States District Court, Western District of Texas (Austin Division). The original Counterclaim, then joined in by FSS, was premised primarily on federal question jurisdiction under 42 U.S.C. §1983 as well as recognition of the referral of the Connecticut Plaintiffs' claims against Jones and FSS to this bankruptcy court pursuant to 28 U.S.C. §157(a) and (b).

6.  On November 12, 2024, two weeks after filing the original Counterclaim, Jones and FSS filed their First Amended Answer, Affirmative Defenses Subject Thereto, and Counterclaims to include his and the FSS jury demand.  [Dkt No. 11].

7.  The Connecticut Plaintiffs consented to the transfer of their Adversary and the First Amended Counterclaim ("FAC") ultimately to this bankruptcy court.

8.  The Connecticut Plaintiffs have sought mandatory and permission abstention and remand, notwithstanding the federal question jurisdiction of 42 U.S.C. § 1983 and the un-plead facts that on remand relief by the State Court could not be granted because of the continuation of the automatic stay.

9.  The Connecticut Plaintiffs have filed a Motion to Dismiss the First Amended Counterclaim filed only days after the Original Counterclaim, primarily to perfect Jones' jury demand.  Jones also timely filed a response to the Motion to Dismiss.

10.  This Bankruptcy Court has not ruled on the Motion to Dismiss or the Motion for Abstention or Remand.

11. This Motion for Leave to file Jones's SAC is in further response to the pending Motion to Dismiss and Abstain or Remand, to allow the Court to review the more thorough statement of claims and supporting law Jones has brought. For clarity, by the SAC, Jones does not seek to set aside the Connecticut Judgment. Rather, Jones seeks damages and other relief exclusively through 42 U.S.C. §1983, notwithstanding the Connecticut Judgment, all as set out and explained in the attached SAC.

### III.
### RELIEF REQUESTED

12. Jones seeks to file their SAC, a draft of which is attached hereto as **Exhibit "A."** As the Counter-Plaintiff, Jones seeks to include additional bases and claims detailed in the proposed SAC and address alleged pleading deficiencies raised by the Counterclaim Defendants in their FRCP 12(b)(6) pleading.

### IV.
### ARGUMENTS AND AUTHORITIES

**A.   Facing Dismissal, a Party Should Have an Opportunity to Amend its Pleadings**

13. Rule 15(a) provides that leave to amend shall be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a). "[T]he language of this rule 'evinces a bias in favor of granting leave to amend.'" *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (q*uoting Lyn-Lea Travel Corp. v. Am. Airlines Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)).

14. The policy of the federal rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while avoiding an excessive formalism. *Dussouy v. Gulf Coast Inv. Corp*., 660 F.2d 594, 597-598 (5th Cir. 1981) *(citing Foman v. Davis,* 371 U.S. 178, 182, (1962)*; Conley v. Gibson,* 355 U.S. 41, 48, (1957)).

15. In the Fifth Circuit, to emphasize the mandate to avoid undue formalism, the Court

liberally allows amendments to complaints to allow plaintiffs to state their "best case," so that justice is achieved. A plaintiff is deemed to have pleaded their "best case" when they are apprised of the alleged insufficiency of their complaint but take no further action to cure the alleged deficiencies. *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008).

16. In fact, the Fifth Circuit focuses on the importance of affording a plaintiff notice of a pleading deficiency and an opportunity to cure, noting that a subsequent dismissal is generally only appropriate if there has been a "repeated failure to cure deficiencies by amendments previously allowed." *Dussouy,* 660 F.2d at 597-598.

17. Indeed, the practice in the Fifth Circuit is for a motion to dismiss to be the instrument that apprises a plaintiff of the alleged pleading deficiencies that may need amendment: "A motion to dismiss can apprise the plaintiff of the insufficiency of his complaint and provide an opportunity to plead his best case in response." *Neuens v. Tulino*, 2025 U.S. App. LEXIS 12249, *4 (5th Cir. 2025). The Fifth Circuit held in *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir. 1986) that "[a] complaint sought to be dismissed under Rule 12(b)(6) may generally be amended to cure its deficiencies."

18. Almost without exception, a plaintiff whose pleading is criticized should be given at least one opportunity to try to amend before any consideration of denial of the right to amend. In the Fifth Circuit**,** "[t]he Rule 'evinces a bias in favor of granting leave.' (quoting *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597 (5th Cir. 1981))." *Id*. at 1208. *See, also CH Offshore, Ltd. v. Mexiship Ocean CCC S.A., De C.V.*, 2025 U.S. App. LEXIS 33495 (5th Cir. 2025)

    **B.**    **Specific Grounds to Amend**

19. Specifically, the FAC was filed primarily to address and perfect the jury demand pleadings. Hence it was not a true amendment in the normal sense.

20. Jones's Counterclaims are brought primarily under 42 USC § 1983, the elements of which have been summarized by the Fifth Circuit as follows:

> "A person may assert a §1983 claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates that person's rights under the Constitution. To state such a claim, such person "must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."

*Anderson v. Valdez,* 845 F.3d 580, 599 (5th Cir. 2016). Here, Jones seeks leave to file the attached the SAC, primarily to address issues raised by the Connecticut Plaintiffs in their motion to dismiss on the second aspect of a §1983 claim, namely demonstrating that Jones's deprivation of his Constitutional rights was committed by the Connecticut Plaintiffs acting under color of state law.

21. As to the "under color of state law" issue, the Fifth Circuit has also noted, that determining whether, when and by whom, private individuals are to be determined to have acted under color of state law, is a complex area of law. *Doe v. United* States, 831 F.3d 309, 314 (5th Cir. 2016) ("The Supreme Court has used at least four tests to determine whether private conduct is "fairly attributable to the State...it is unclear whether these tests are actually different in operation or [are] simply different ways of characterizing the necessarily fact-bound inquiry..."). (internal citations and quotes omitted). Hence it is not an issue that should easily be used as a basis for denial of the right to amend.

22. The SAC Jones requests leave to amend, brings more factual clarity primarily to the acts and events that confirm the Connecticut Plaintiffs have acted under color of state law.

C. **Motion to Leave Considerations**

23. The Fifth Circuit has held that district courts should consider numerous factors when determining whether to grant leave to amend, including undue delay; bad faith or dilatory motive; repeated failure to cure deficiencies by previous amendments; undue prejudice to the

opposing party, and futility of the amendment. *See, Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004); *see also SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n,* 881 F.3d 933, 944 (5th Cir. 2018). None of these elements are applicable here; in fact, all warrant this first actual "merits" amendment.

24. There has not been and will be no undue delay prejudice that may prevent filing of the SAC. The passage of time is not a valid reason for denying leave to amend, as "it is only *undue* delay that forecloses amendment. Amendment can be appropriate as late as trial or even after trial." *Dussouy*, 660 F.2d at 598. Indeed, often leave to amend is granted *after* a court has in fact dismissed a complaint under FRCP 12(b)(6). *Id.*at n. 2

25. Next, to justify denying leave to amend, there must be "undue prejudice" to the non-moving party. *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). In this case absolutely no prejudice to the Counter-Defendants exists, and certainly nothing "undue." In fact, the Counter-Defendants' original suit was brought in violation of the automatic stay by seeking to collect on a judgment where the judgment at the time was not final on appeal *and* there was (and is) no final and appealable order finding the Connecticut Plaintiffs' debt is not dischargeable. There has been no discovery, no pre-trial Rule 26(a) filing or orders in the Counter-Defendants' suit or in the Counterclaims brought by Jones because of the Connecticut Defendants Motion to Dismiss procedurally prevents that. Hence, there is no prejudice to the Counterclaim Defendants and certainly no *undue* prejudice.

26. No evidence of bad faith or dilatory motives exists here either, and in fact, Counter-Plaintiff has been diligently searching and investigating to meet the grounds alleged by the Counterclaim Defendants as to why the original counterclaims should be dismissed.

27. The only other issue for justifying denying leave to amend, is if Jones's proposed

SAC would be "futile." It clearly would not be. A proposed amendment to a complaint is futile only if the proposed claims could not survive Rule 12(b)(6) which means at this stage, the Court must accept well-pleaded facts as true and determine only whether the claims are plausible.

28. As stated, the elements of a proper §1983 claim are that a prospective plaintiff "must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by persons acting under color of state law." *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016).

29. The facts that (a) Jones is a media/press defendant, (b) the Sandy Hook tragedy was a matter of public concern, and (c) the Connecticut Plaintiffs were public figures, are all pleaded with great particularity. The corresponding Constitutional rights of Jones under the First Amendment as a media/press defendant are well established and have been recognized as ironclad Constitutional rules for decades. Hence the first of the two §1983 elements is easily met.

30. As to the second element, the fact that at the urging of the Connecticut Plaintiffs, the state of Connecticut removed Jones's Constitutional rights and handed to the Plaintiffs the ability to determine what Jones was liable for, is also pleaded in detail and unarguable. The only remaining issue is whether the SAC plausibly pleads the Connecticut Plaintiffs acted under color of state law.

31. Under Fifth Circuit precedent, most notably *Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 848 F.2d 544 (5th Cir. 1988), Jones's proposed §1983 claims against private parties readily meet the standard of pleading the Connecticut Plaintiffs acted under color of state law. In *Gault*, the Fifth Circuit directly addressed when private litigants may be treated as acting under color of state law and emphasized several principles critical here.

32. First, while private parties do not become state actors merely by filing suit or

8

invoking state statutes -- and Jones does not claim otherwise -- private parties act under color of state law when they either act together with state officials, obtain significant aid from state actors, and/or participate in interlocking relationships with state officials that link private conduct to state power.

33. Further, the Fifth Circuit stressed that the state-action analysis cannot be performed "in a vacuum" but must be determined in the context in which it occurred.

34. In *Gault*, the Fifth Circuit found private persons acted under color of state law where private growers worked in concert with government officials, relied on public prosecutors acting in dual roles, received assistance from law enforcement, and used state processes to obtain restraining orders that affected constitutional rights of the plaintiffs. The court held that such interlocking relationships and significant state aid were enough to treat the growers as state actors.

35. Here, the SAC alleges even more direct relationships between private parties and the exercise of state power, pleading that private parties urged and obtained procedures that displaced constitutionally required adjudication; were allowed to have their allegations adopted as binding determinations and were allowed to have jurors instructed that liability had already been established. The State then used its judicial and enforcement machinery to give those determinations coercive legal effect.

36. These allegations go well beyond "mere resort to the courts." They describe private parties functioning as active participants in a process through which state authority imposed binding legal consequences. These pleadings are more than sufficient to plausibly allege action under color of state law.

37. The Supreme Court's decisions in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) and *Dennis v. Sparks*, 449 U.S. 24, 28 (1980) reinforce the Fifth Circuit's approach. *Lugar*

explained that when a deprivation results from the invocation of state-created procedures and the private party is a joint participant with state officials, state action may exist. *Dennis* likewise held that private parties who are willful participants in joint action with a judge may be treated as state actors even if the judge is immune. Those cases support the principle applied in *Gault* that joint participation and significant use of state authority can satisfy §1983's color-of-law requirement. Critically, *Gault* further demonstrates how those principles operate in real litigation settings involving private litigants and judicial processes. This case fits comfortably within that Fifth Circuit framework.

38. The proposed claims in the SAC also implicate procedural due process, which require neutral adjudication before the State deprives a person of property. The proposed SAC plausibly alleges that constitutionally required fact-finding was eliminated, operative facts were supplied by one side rather than determined by a neutral decision-maker, and those determinations were then enforced through state authority.

39. When private parties are active participants in invoking and benefiting from such a process, the points underlying *Gault*—joint use of state power to effect constitutional injury—are squarely implicated. At minimum, these allegations make state action plausible.

40. Furthermore, the SAC alleges that Sandy Hook was a state institution; many of the Connecticut Plaintiffs were relatives of state employees; and the state through various agencies including a commission established by the Governor of Connecticut and Connecticut law enforcement, provided assistance to the Connecticut Plaintiffs.

41. Furthermore, the "hostility of the community" towards Jones has been adequately pleaded, which *Gault* also found relevant to the "color of state law" requirement. In *Gault*, the hostility of the community toward the union organizers was evident. *Gault*, 848 F.2d at 552. *See*

*also id*. at 555 (referring to "deep-seated community hostility.").

42. Here, it has been clearly and adequately pleaded that in handing the Connecticut Plaintiffs the decision-making power, the Constitutional deprivations were inflicted solely and unilaterally by the Connecticut Plaintiffs. The procedures that allowed this were without question the product of state action. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982).

43. As *Gault* held, a party alleging its opponents acted together with various state officials who must have been acting in their official capacities, and obtained significant aid therefrom, adequately allege its opponents acted under color of state law.

44. Similarly, here the Connecticut state court having allowed the Connecticut Plaintiffs to determine what Jones would be liable for and for their pleadings to establish the acts and burdens of proof, a sufficiently close relationship between the Connecticut Plaintiffs and the state have been alleged that the Connecticut Plaintiffs can fairly be viewed as agents of the state.

45. Also, *Gault* repeatedly emphasizes that whether a private party may fairly be characterized as a state actor is a fact-intensive question depending on the totality of circumstances, which the Fifth Circuit held is rarely appropriate for resolution on a motion to dismiss.

46. Leave to amend should be granted.

47. The law in the Fifth Circuit is that this Bankruptcy Court should freely give leave to amend "when justice so requires." *See generally, Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)* (reversing denial of leave to amend by citing to *Rule 15(a)(2)'s* mandate to freely give leave to amend and stating "this mandate is to be heeded"). Applying the liberal standard for amending pleadings, especially in the early stages of a case, is the best way to ensure that cases will be decided justly and on their merits. *See, Foman v. Davis*, 371 U.S. 178

(1962) [leave to amend should be granted unless there is a substantial reason to deny it, such as undue delay or prejudice]., citing Fed. R. Civ. P. 1, Federal Rules of Civil Procedure.

## V.
## ATTACHMENT OF THE PROPOSED SECOND AMENDED COUNTERCLAIM

48. Attached hereto as **Exhibit "A"** is the SAC that, upon permission of this Court by granting of this Motion, Counter-Plaintiff will file and promptly serve on all Counter-Defendants. Jones and FSS, as Counter-Plaintiffs, believe all objections to the prior First Amended Counterclaim are addressed.

## VI.
## CERTIFICATE OF CONFERENCE

49. Plaintiff has conferred with counsel for Plaintiffs/Counter-Defendants on January 12, 2025, and Connecticut Plaintiffs are opposed to the relief sought in this Motion.

WHEREFORE, Defendant/Counter-Plaintiffs request that the Court grant this Motion for Leave to File Second Amended and for such other and further relief as the Court deems appropriate.

Dated: February 12, 2026

Respectfully submitted,

   */s/ Ben C. Broocks*
BEN C BROOCKS
State Bar No. 03058800
WILLIAM A. BROOCKS
St. Bar No. 24107577
BROOCKS LAW FIRM PLLC
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Phone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com
wbroocks@broockslawfirm.com
**COUNSEL FOR ALEX JONES**

      /s/ Shelby A. Jordan
SHELBY A. JORDAN
State Bar No. 11016700
S.D. No. 2195
ANTONIO ORTIZ
State Bar No. 24074839
S.D. No. 1127322
***Jordan & Ortiz, P.C.***
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
        aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com
**CO-COUNSEL FOR ALEX JONES**

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2026, a true and correct copy of the foregoing document was served electronically on all parties receiving or entitled to notice through the Court's CM/ECF.

      /s/ Shelby A. Jordan
      Shelby A. Jordan